# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dwayne Thompson, individually, and on behalf of his minor daughter "RMT" and Pamela McDeavitt, | ) ) ) ) | Civil Action No. 16-1100 |
| Plaintiffs, | ) ) ) | District Judge Cercone |
| v. | ) ) | Magistrate Judge Lenihan |
| Kathryn M. Hens-Greco; Kimberly Berkeley Clark, Krista Abram; Shane Mock; Jonathan Voelker; Pernille Frankmar; Voelker & Colton, LLC; Lauren Darbouze; Reserve Township Police; Brian Tully; Fred Boory Jr; Pittsburgh Municipal Court; Barbara Clements; Allegheny County; Patrick Quinn; Christopher Connors; Geraldine M. Redic; Claire Capristo; Allegheny County Sheriff's Department; Anthony Fratto; Holly Zemba; Allegheny County Department of Court Records; Allegheny County Office of Children and Youth Services; Bruce Noel; Brynn Alpee; McKeesport Area School District; Fifth Judicial District; and John and Jane Does, 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ECF No. 74 |
| Defendants. | ) | |

# **REPORT AND RECOMMENDATION**

## I.  RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by McKeesport Area School District (ECF No. 74) be granted.

## II. REPORT

### A. RELEVANT FACTS[1] AND PROCEDURAL BACKGROUND

On July 25, 2016, Plaintiff Dwayne Thompson ("Plaintiff" or "Thompson") filed a Motion for Leave to Proceed in Forma Pauperis. (ECF No. 1.) On July 26, 2016, the Court granted the Motion and Plaintiff's Complaint, brought individually and on behalf of his minor daughter, "RMT," was filed the same day. (ECF No. 2.) On October 24, 2016, Plaintiff, and a newly added plaintiff, Pamela McDeavitt ("McDeavitt") (collectively "Plaintiffs") filed a "Verified Amended Joinder Complaint" ("Amended Complaint"). (ECF No. 13.) Thereafter, pursuant to Order of Court, Plaintiffs filed a Second Amended Complaint December 27, 2016. (ECF No. 31.) Finally, after receiving leave of court on February 8, 2017 to file a Third Amended Complaint as it relates to Defendant McKeesport Area School District (ECF No. 57), Plaintiffs filed a Third Amended Complaint on March 13, 2017. (ECF No. 68.)

The above-captioned case against moving Defendant McKeesport Area School District ("MASD"), and a host of other defendants, arises from an underlying custody dispute ("Family Court Proceedings") with the mother of RMT, Defendant Krista Abram ("Abram"). Generally, Plaintiffs allege in painstaking detail the facts and circumstances surrounding Plaintiff Thompson's attempts to obtain custody of/visitation with his biological daughter RMT. These attempts include state court proceedings in the Court of Common Pleas of Allegheny County, Family Division; PFA proceedings; alleged violation of PFA orders and attendant indirect criminal contempt ("ICC") proceedings with the involvement of the Reserve Township Police Department; acts and omissions of Children and Youth Services and MASD; the alleged professional negligence of Plaintiff Thompson's attorneys; alleged threats and intimidation by

---

[1] Because the allegations and named defendants are numerous, the Court focuses only on those facts relevant to the pending motion.

2

the Allegheny County Sheriff's Department; and alleged omissions by various defendants. Plaintiffs appear to allege that all named defendants were involved in an overarching conspiracy with Defendant Abram and her Defendant boyfriend, to interfere with Plaintiff Thompson's access to RMT.

Specifically, as to moving Defendant MASD, Plaintiffs allege that it is the school district where RMT currently lives and has lived for a few years. (ECF No. 68 ¶ 80.) In December of 2015, Plaintiff Thompson filed a Petition for Special Relief in state court requesting, among other things, that he be provided with RMT's school records. (ECF No. 68 ¶ 318.) Plaintiffs allege that Defendant Judge Clark granted Thompson's request and issued an order. (ECF No. 68 ¶ 320.) Plaintiffs further allege that Defendant Abram never provided RMT's school records to Thompson as she was ordered to do by Defendant Clark. (ECF No. 68 ¶ 325.) After waiting six (6) months for Defendant Abram to provide the records, Plaintiff Thompson contacted MASD. According to Plaintiffs, MASD, "through their agent, Brea Adams" ("Adams"), told Plaintiffs that in order to receive RMT's school records, "Thompson would have to bring a written notarized request to the administrative office." (ECF No. 68 ¶ 326.) Thompson delivered the written notarized request to Adams and waited for the records to be sent to him. (ECF No. 68 ¶ 327.) The records did not arrive after two weeks. (ECF No. 68 ¶ 328.)[2] Adams indicated again that the records would be sent but that she had been busy tending to other matters. (ECF No. 68 ¶ 327.) It appears from the allegations, although not directly plead, that when Thompson delivered the written notarized request to Adams, he violated the terms of a PFA and was accused of an ICC violation in June of 2016. *See* ECF No. 68 ¶¶ 84, 330-33.)

---

[2] Information appears to have been omitted from paragraph 328 of the Third Amended Complaint concerning what action was taken and by whom, after the records did not arrive within two weeks.

Plaintiffs allege that "[u]pon information and belief, defendant McKeesport, through their agent(s) were complicit in and or conspired with defendant Abram to cause Thompson to again be accused of an alleged ICC violation[,] " and conspired with Defendant Abram "and possibly others, to protect Abram and alienate Thompson from RMT." (ECF No. 68 ¶¶ 330, 335.)  That is, continues Plaintiffs, "[h]ad both Thompson and McDeavitt not been told by Brea Adams that the written request be brought to the administrative building, he would have mailed it."  (ECF No. 68 ¶ 331.)  Plaintiffs allege on information and belief, that Defendant MASD "set Thompson up" so Abram could allege an ICC violation against him.  (ECF No. 68 ¶ 332.)  Thompson spent three more days in jail and "had to be bailed out again."  (ECF No. 68 ¶ 337.)  Adams attended the ICC hearing and alleged that she had been harassed by Plaintiff McDeavitt.  (ECF No. 68 ¶ 333.)  MASD notified the court concerning Thompson's request for RMT's school records.  Plaintiffs further allege that Defendant MASD did not notify the court or CYF that RMT missed 69 days of school, was tardy 28 times, and failed the second grade.[3]  (ECF No. 68 ¶¶ 82, 334, 336.)  Plaintiff Thompson learned this information when he eventually received the school records.  (ECF No. 68 ¶ 338.)  Later, Thompson learned that Abram removed RMT from MASD and placed her in cyber school.  (ECF No. 68 ¶ 340.)

Plaintiffs set out no claims that are specifically directed to these moving Defendants.  Instead, the following claims are directed to all defendants generally: § 1985 conspiracy to interfere with civil rights; § 1983 failure to intercede in wrongs; § 1983 malicious abuse of process; § 1983 violation of the First, Fourth and Fourteenth Amendments; § 1986 for neglect to

---

[3] This allegation is contradicted at paragraph 78 of the Third Amended Complaint wherein Plaintiffs allege that a CYF caseworker was assigned when it was reported that RMT had failed second grade because of "Abram's failure to get her to school."  (ECF No. 68 ¶ 78.)  This allegation is further contradicted by Plaintiffs in their Opposition to Motion to Dismiss, ECF No. 107 ¶ 12, where they indicate that "[i]t is undisputed that MASD filed charges against Defendant Abram for truancy related to the unexcused absences and tardiness[.]"  (ECF No. 107 ¶ 12.)

prevent; Ninth Amendment fundamental right of a parent to direct the upbringing and education and care of their children; intentional infliction of emotional distress; and parental alienation. (ECF No. 68 at Counts III, IV, V, VI, VII, VIII, XII, XIII, XIV.) Moreover, Plaintiffs do not allege facts within each count that describe how the moving Defendants violated the rights generally referred to in each count.

Plaintiffs seek only monetary relief in an amount in excess of one million dollars.

B. LEGAL STANDARD

<u>Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)</u>

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler[v. UPMC Shadyside*, 578 F.3d [203,][] 213 [(3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin,*

5

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).

Importantly, the Court must liberally construe the factual allegations of the complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

C. ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a

remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Defendant MASD argues that Plaintiffs have failed to state a claim against it in any of the counts directed to "all defendants."[4] Plaintiffs respond that have alleged enough facts to state a claim as to all of these counts.[5]

FIRST, FOURTH AND FOURTEENTH AMENDMENT RIGHTS

In Count V of the Third Amended Complaint, Plaintiffs allege against "defendants all" a § 1983 malicious abuse of process claim stating that "[a]ll defendants maliciously, individually and collectively were complicit in and/or conspired to abuse the process, intentionally perverting it for their own illegitimate ends and to the extreme detriment and injury to Plaintiffs." (ECF No. 68 ¶ 459.) In Count VI, Plaintiff Thompson avers violations of his First, Fourth, and Fourteenth Amendment rights as to "defendants all." The averments state that "[d]efendants allowed and enabled defendant Abram, a serial filer, to abuse the system and use it as a weapon to annoy, harass and otherwise injure Thompson, . . . which led to Thompson being denied his rights and deprived of his liberty, freedom and property." (ECF No. 68 ¶¶ 461-62.) In Count VIII, Plaintiffs allege against "defendants all" a § 1983 "Deprivation of Rights" wherein they state that "[a]ll defendants subjected and/or caused Plaintiffs to be subjected to the deprivation of their inherent rights and privileges secured by the Constitution and laws." (ECF No. 68 ¶ 470.)

---

[4] There are no counts in the Third Amended Complaint directed to MASD specifically.
[5] Plaintiffs indicate that they have responded to motions to dismiss filed by other named "defendants raising similar arguments and in the interest of judicial economy will not be redundant by including the same legal arguments in their briefs in opposition to each individual defendants' motion." (ECF No. 108 at 5.)

Liberally construing the Third Amended Complaint, and affording Plaintiffs every favorable inference, Plaintiffs have failed to state First, Fourth, and Fourteenth Amendment claims against MASD pursuant to the requirements of *Twombly* and its progeny.

Fourteenth Amendment

First, as to the Fourteenth Amendment, it appears that Plaintiffs may be attempting to state a Fourteenth Amendment substantive due process claim as it relates to some perceived duty of the school district to protect Thompson, McDeavitt, and RMT against the actions/inactions of Defendant Abrams.

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the State to protect citizens from the acts of private persons. *Id*. at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. *Id*. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the

> analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id*. at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id*. at 195. The *DeShaney* court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 196.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a State does play a part in the creation of the dangers faced by a private person, or where through its actions, the State renders the individual more vulnerable to them. 95 F.3d at 1205, 1211. In order to prevail on a state-created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

9

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). A plaintiff's failure to satisfy any one of the above elements will defeat the state-created danger claim. See *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997).

In *Phillips v. County of Allegheny*, the United States Court of Appeals for the Third Circuit discussed the requirement of an affirmative act, emphasizing the following language in *Bright*:

> "Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it,* that can violate the Due Process Clause."

515 F.3d 224, 235 (3d Cir. 2008) (quoting *Bright*, 443 F.3d at 282) (other citation omitted) (emphasis added by *Phillips* court). The *Phillips* court continued that "[t]he line between action and inaction may not always be clear. However, we have never found a state-created danger claim to be meritorious without an allegation and subsequently showing that state authority was affirmatively exercised in some fashion." *Id.* at 235-36.

Here, the allegations in the Third Amended Complaint do not allege that MASD acted "affirmatively" to harm RMT, Thompson or McDeavitt. The basis of Plaintiffs' claim appears to be that MASD, through its omissions, allowed and enabled Defendant Abram to abuse the court system against Thompson, so that he would be denied access to RMT. It is not the duty of a school district pursuant to the Substantive Due Process Clause to act affirmatively to protect the parties to a custody dispute from one another. Moreover, the facts of the Third Amended Complaint and Plaintiffs' submissions in this case indicate that the family court and CYF were aware of RMT's school attendance record.

10

Further, the Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty upon the State to protect citizens from the acts of private persons. *DeShaney*, 489 U.S. at 198-200. The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed above, concerns the situation when a "state-created danger" is involved. The second exception where the State has a duty to protect or care for individuals from the acts of private citizens arises when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization. *Torisky v. Schweiker*, 446 F.3d 438, 444-45 (3d Cir. 2006). Recently, in *Morrow v. Balaski*, the court of appeals added the following:

> [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, *or other similar restraint of personal liberty—* which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

719 F.3d 160, 168 (3d Cir. 2013) (emphasis by *Morrow* court). Generally, no special relationship exists between school children and the State because parents decide where to send their children to school, children remain residents of their home, and children are not physically restrained from leaving school during the school day. *Stanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (discussing *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1371-73 (3d Cir. 1992) (holding that no special relationship exists between school children and the State)); *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713 (3d Cir. 1993). *See also Bailey v. Sch. Dist. of Philadelphia*, No. 06-CV-4240, 2008 WL 343088 *2 (E.D. Pa., Feb. 7, 2008). Therefore, any attempt by Plaintiffs to state claims under the Fourteenth Amendment Substantive

Due Process Clause must fail as a matter of law and any attempt to amend would be futile.[6]

Consequently, it is recommended that MASD's Motion to Dismiss Plaintiffs' claims pursuant to the Fourteenth Amendment be granted.

Fourth Amendment

In their Response to MASD's Motion to Dismiss, Plaintiffs argue the following with regard to their malicious abuse of process claim:

> The Third Amended Complaint contains factual allegations about Brea Adams' role in causing the ICC complaint against Thompson. It contains factual allegations that Defendant Abram abused the PFA and ICC process to harass, annoy and have arrested and incarcerated, Thompson. Thompson was deprived of his right to liberty, *inter alia,* as a direct result of the actions of Adams. MASD instructed Thompson to appear at the administrative offices of MASD to obtain RMT's school records then contacted Defendant Abram to inform her that Thompson had violated the PFA by appearing at the school. Defendant Abram then filed an ICC complaint resulting in the arrest and incarceration of Thompson.

(Plaintiffs' Brief in Opposition to MASD's Motion to Dismiss, ECF No. 108 at 4.)

With regard to a claim for abuse of process, the United States District Court for the Middle District of Pennsylvania has considered the following:

> "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . [Malicious prosecution] has to do with the wrongful initiation of such process, while abuse of civil process [or criminal process] is concerned with a perversion of a process after it is issued."

*Bristow v. Clevenger*, 80 F. Supp.2d 421, 430 (M.D. Pa. 2000) (quoting *McGee v. Feege*, 535

---

[6] The United States Court of Appeals for the Third Circuit in *Phillips v County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

12

A.2d 1020, 1023 (Pa. 1987) (internal quotations and citations omitted)). Consequently, Plaintiff will prevail on a § 1983 claim for abuse of process where "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Bristow*, 80 F. Supp.2d at 431 (quoting *Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989) (other citations omitted)). Again, the *Bristow* court explained as follows:

> Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." . . . "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." . . . "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"

*Bristow*, 80 F. Supp.2d at 431 (internal citations omitted).

Here, MASD's Motion to Dismiss the abuse of process claim must be granted. In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior.[7] Instead, the court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

---

[7] Here, Plaintiffs allege that "defendant McKeesport, through their agent, Brea Adams, told Thompson and McDeavitt that in order to receive RMT's school records[,] Thompson would have to bring a written notarized request to the administrative office." (ECF No. 68 ¶ 326.) (ECF No. 68 ¶ 326.) Clearly, any claim against MASD pursuant to § 1983 for respondeat superior liability fails as a matter of law.

13

inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

A municipal liability claim against MASD must necessarily fail because the facts alleged in the Third Amended Complaint do not suggest that MASD had a policy, custom or practice that resulted in a constitutionally cognizable violation. Plaintiffs complain only that MASD's employee, Brea Adams, acting in concert with RMT's biological mother, Defendant Abram, "set up" Plaintiff Thompson so that an ICC would be brought against him. There are no allegations that it was an official policy of MASD, or a custom or practice, that MASD used PFA/ICC

procedures to alienate parents from their children. Instead, the allegations concern only the actions of a MASD employee as they relate to Thompson and RMT. As noted above, municipal liability may not be premised on the mere fact that the governmental unit employed the offending official. Relatedly, Plaintiffs have failed to allege facts that MASD maintained a policy, custom or practice with "deliberate indifference" to the constitutional deprivations allegedly brought about by any policy or custom. In light of the detailed facts and circumstances alleged in the Third Amended Complaint, any attempt to amend this claim against MASD would be futile.[8]

First Amendment

In its review of the voluminous Third Amended Complaint and Plaintiffs' various submissions, the Court can uncover no bases for Plaintiffs' First Amendment claim against MASD. Therefore, MASD's Motion to Dismiss Plaintiffs' First Amendment claim should be granted. Any attempt to amend would be futile.

NINTH AMENDMENT

Count XII—Ninth Amendment fundamental right of a parent to direct the upbringing and education and care of their child(ren)—fails as a matter of law. "The Ninth Amendment does not independently provide a source of individual constitutional rights." *Clayworth v. Luzerne Cty.,Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (citing *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007)).[9]

---

[8] Clearly, Plaintiff McDeavitt may not maintain a claim for malicious abuse of process as the facts of the Third Amended Complaint do not suggest that process was initiated against her.
[9] Although the Fourteenth Amendment Substantive Due Process Clause does protect the liberty interest in familial integrity, that interest "is limited by the compelling governmental interest in the protection of children." *Clayworth v. Luzerne Cty.,Pa.*, 513 F. App'x 134, 137 (3d Cir.

15

Therefore, it is respectfully recommended that MASD's Motion to Dismiss Count XII for violation of Plaintiff Thompson's Ninth Amendment rights be granted.

CONSPIRACY

In order to state a claim for conspiracy, Plaintiffs are required to show "'a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)(quoting *Hammond v. Creative Financial Planning*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). *See also Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)). A conspiracy claim requires specific allegations "which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose." *Id.* "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F. Supp. at 1020. Rather, there must be a showing that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982) (citing *Tarkowski v. Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980)). The United States Court of Appeals for the Third Circuit has made clear that in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.v. Fox*

---

2013) (quoting *Croft v. Westmoreland Cnty. CYS*, 103 F.3d 1123, 1125 (3d Cir. 1997)). Here, Plaintiffs have failed to allege conduct sufficiently arbitrary to shock the conscience for purposes of a substantive due process analysis.

*Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The facts alleged must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

Here, while Plaintiffs attempt to allege an overarching conspiracy among defendants, claiming that they acted in concert at various times and at various locations in order to interfere with their rights, the claims are pure speculation and do not amount to sufficient facts from which this Court could infer conspiracy. Plaintiffs do not direct the Court to facts that suggest a preceding agreement. Instead, the Third Amended Complaint offers only a sheer possibility that all Defendants engaged in a conspiracy. *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556-57).[10]

Therefore, it is respectfully recommended that Defendant MASD's Motion to Dismiss Plaintiffs' claims for conspiracy be granted.

SUPPLEMENTAL STATE LAW CLAIMS

Because the Court recommends that all claims over which it has original jurisdiction be dismissed, it is further recommended that the Court decline to exercise its supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(c)(3).

III. CONCLUSION

---

[10] Like their § 1983 claim for conspiracy, Plaintiffs are unable to state a plausible claim for conspiracy pursuant to § 1985 as attempted in Count III. *See United Broth. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). Likewise, Plaintiffs' attempt to state a conspiracy claim in Count VII pursuant to 42 U.S.C. § 1986 for "Neglect to Prevent" also fails because a § 1986 claim cannot exist without a viable § 1985 claim. *Patterson v. City of Philadelphia*, Civil Action No. 08-2140, 2009 WL 1259968, at *4 n.4 (E.D. Pa. May 1, 2009).

It is respectfully recommended that the Motion to Dismiss filed by Defendants McKeesport Area School District (ECF No. 74) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: July 28, 2017

BY THE COURT

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:  Dwayne Thompson
     1013 Coal Street
     Pittsburgh, PA 15221

     Pamela McDeavitt
     104 Dorf Avenue
     Pittsburgh, PA 15209

     All counsel of record
     Via electronic filing