IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dwayne Thompson, individually, and on behalf of his minor daughter "RMT" and Pamela McDeavitt, | Civil Action No. 16-1100 |
| Plaintiffs, | |
| v. | District Judge Cercone<br>Magistrate Judge Lenihan |
| Kathryn M. Hens-Greco; Kimberly Berkeley Clark, Krista Abram; Shane Mock; Jonathan Voelker; Pernille Frankmar; Voelker & Colton, LLC; Lauren Darbouze; Reserve Township Police; Brian Tully; Fred Boory Jr; Pittsburgh Municipal Court; Barbara Clements; Allegheny County; Patrick Quinn; Christopher Connors; Geraldine M. Redic; Claire Capristo; Allegheny County Sheriff's Department; Anthony Fratto; Holly Zemba; Allegheny County Department of Court Records; Allegheny County Office of Children and Youth Services; Bruce Noel; Brynn Alpee; McKeesport Area School District; Fifth Judicial District; and John and Jane Does, 1-10, | ECF No. 77 |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss the Third Amended Complaint filed by Defendants Allegheny County Sheriff's Department, Deputy Sheriff Anthony Fratto, Deputy Sheriff Holly Zemba, and Jane and John Does (ECF No. 77) be granted.

## II. REPORT

### A. RELEVANT FACTS[1]

The above-captioned case against the moving Defendants Allegheny County Sheriff's Department ("Sheriff's Office")[2], Deputy Sheriff Anthony Fratto ("Fratto"), Deputy Sheriff Holly Zemba ("Zemba"), and Jane and John Does (collectively "Sheriff Defendants"), and a host of other defendants, arises from an underlying custody dispute ("Family Court Proceedings") with the mother of RMT, Defendant Krista Abram ("Abram"). Generally, Plaintiff alleges in painstaking detail the facts and circumstances surrounding Plaintiff Thompson's attempts to obtain custody of/visitation with his biological daughter RMT. These attempts include state court proceedings in the Court of Common Pleas of Allegheny County, Family Division; PFA proceedings; alleged violation of PFA orders and attendant indirect criminal contempt proceedings with the involvement of the Reserve Township Police Department; acts and omissions of Children and Youth Services and McKeesport Area School District; the alleged professional negligence of Plaintiff Thompson's attorneys; alleged threats and intimidation by the Sheriff's Office; and alleged omissions by various defendants. Plaintiff appears to allege that all named Defendants were involved in an overarching conspiracy with Defendant Abram and her Defendant boyfriend, Shane Mock, to interfere with Plaintiff Thompson's access to RMT.

On March 23, 2017, the Sheriff Defendants filed their Motion to Dismiss and Brief in Support. (ECF Nos. 77 & 78.) On March 29, 2017, the Court ordered that Plaintiff file a response. (ECF No. 89.) Plaintiff was given two (2) extensions of time in which to file a response. *See* ECF Nos. 123, 125. Plaintiff has filed no response.

---

[1] Because the allegations and named defendants are numerous, the Court focuses only on those facts relevant to the pending motion.
[2] The Allegheny County Sheriff's Office indicates that it has been misidentified as "Department." Here, the Court refers to this Defendant as "Sheriff's Office."

Specifically, as to these moving Sheriff Defendants, Plaintiff alleges the following:

While at family court, Defendant Fratto and another female deputy seized Thompson's phone and other belongings and detained him for three (3) hours while Defendant Abram wrote an ICC complaint against him. Thereafter, Thompson was taken into custody on the basis of a doctored and suspected backdated warrant. After he was bailed out of jail, Thompson returned to family court to retrieve his belongings but discovered that money, personal papers and other important documents were missing. Thompson avers that his missing property was never returned to him. Plaintiff further avers that "upon information and belief, Defendants Fratto and the Sheriff ['s Office] were complicit in and/or conspired with other defendants to deprive Thompson of his right to be free of unlawful seizure and arrest." (ECF No. 68 ¶¶ 385-392.)

As to Defendant Zemba, Plaintiff avers that she failed to provide Thompson with "protection under the law, safety and peace of mind when at family court on or about July 8, 2016." (ECF No. 68 ¶ 408.) Specifically, Plaintiff continues that Defendant Zemba was present when Defendant Abram threatened Thompson following the dismissal of a third ICC violation. Plaintiff avers that Defendant Zemba approached Defendant Abram when Defendant Abram entered the elevator. Plaintiff alleges that Defendant Zemba "should have arrested defendant Abram for terroristic threats and witness intimidation but chose not to do so." (ECF No.68 ¶¶408-415.) Finally, Plaintiff avers that Defendant Zemba told Thompson that she would testify that she heard Defendant Abram threaten Plaintiff's life. Plaintiff then filed a police report, and an arrest warrant was issued against Defendant Abram but later withdrawn when Defendant Zemba told police the threat never took place. A video of the incident was then obtained from Defendant Sheriff's Office but, according to Plaintiff, had been altered to minimize the actions and behavior of Defendant Abram. Plaintiff avers that on information and belief, Defendants

Zemba and Sheriff's Office "were complicit in and/or conspired with other defendants to protect defendant Abram and put Thompson . . . in fear of [his] physical safety." (ECF No. 68 ¶¶ 419-23.)

Plaintiff alleges the following claims as to several defendants, including these moving Defendants:

Count I: Violation of Rights under the First and Fourteenth Amendments including rights to equal access to the court, confidence rights to equal protection under the law, to petition the courts for redress of grievances, and to be free from retaliation for petitioning the court for redress of grievances. Specifically, Plaintiff states the following:

> Defendants Clark, Clements, Allegheny County, Quinn, Connors, Redic, Capristo, Sheriff['s Office], Fratto and Zemba, individually and/or collectively, were complicit in and/or conspired to deprive Thompson . . . of equal access to the courts and confidence rights to equal protection under the law by allowing defendant Abram to threaten [his life], numerous court filings intended to harass and annoy, failing to arrest Abram, altering the video of defendant Abram's threats, and harassing and intimidating or causing the harassment and intimidation . . . .

(ECF No. 68 ¶ 443.)

Count IX (excluding Zemba): Violation of Fourth Amendment rights to be free of unlawful seizure/arrest. Specifically, Plaintiff states that "Defendants Fratto, Sheriff[']s Office] and John and Janes Does, unlawfully seized Thompson[']s property and unlawfully detained and arrested him." (ECF No. 68 ¶ 474.)

Count XI: Fifth Amendment right to substantive due process and to be free of arbitrary and capricious acts of government taken without valid government purpose. Specifically, Plaintiff avers that the Sheriff Defendants "were complicit in and/or conspired to deprive Plaintiff[] of

4

[his] right to substantive due process and to be free of arbitrary and capricious acts of government taken without valid government purpose." (ECF No. 68 ¶ 481.)

In addition, Plaintiff further alleges a series of claims directed generally to all defendants. That is, Plaintiff does not allege facts within each count that describe how the moving Defendants violated the rights generally referred to in each count. These claims include the following:

Count III: Section 1985 conspiracy to interfere with civil rights;

Count IV: Section 1983 failure to intercede in wrongs;

Count V: Section 1983 malicious abuse of process;

Count VI: Violation of Thompson's rights under the First, Fourth and Fourteenth Amendments;

Count VII: Section 1986 action for neglect to prevent;

Count VIII: Section 1983 deprivation of rights;

Count XII: Ninth Amendment fundamental right of parents to direct the upbringing and education and care of their children;

Count XIII: Intentional infliction of emotional distress;

Count XIV: Parental Alienation.

Plaintiff sues all individuals in their official and personal capacities. (ECF No. 68 ¶ 88.) He seeks only monetary relief in an amount in excess of one million dollars.

B. LEGAL STANDARD

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556

> U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler[v. UPMC Shadyside*, 578 F.3d [203,][] 213 [(3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester Cnty Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Importantly, the Court must liberally construe the factual allegations of the complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

C. ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANTS FRATTO AND ZEMBA

Fourth and Fourteenth Amendment claims as to Defendant Fratto Barred by Qualified Immunity

In the Third Amended Complaint, Plaintiff avers that "Defendants Fratto, Sheriff and John and Jane Does, unlawfully seized Thompson[']s property and unlawfully detained and arrested him." (ECF No. 68 ¶ 474.) He indicates that he "was detained in [a] room for approximately three hours until an arrest warrant was allegedly obtained." (ECF No. 68 ¶ 387) Plaintiff also avers that he believes that the arrest warrant was "doctored and suspects it was back

7

dated." (ECF No. 68 ¶ 388.)  He concludes that he never received his missing property.  (ECF No. 68 ¶ 391.)

According to public records referenced by Plaintiff in the Third Amended Complaint and attached to the moving Defendants' motion (ECF No. 77), an Indirect Criminal Contempt Complaint was signed and filed by Defendant Abram on January 7, 2016.  On that same date, it was signed and dated by the seated magistrate, Magisterial District Judge Robert Dzvonick. (ECF No. 77-1 at 1.)  Judge Dzvonick issued an arrest warrant on January 7, 2016 and the document reveals bar codes and a digital date stamp of January 7, 2016.  (ECF No. 77-1 at 2.) The warrant includes the Defendant Identification Information sheet.  (ECF No. 77-1 at 4.)  Also included in the warrant packet is the form captioned "Commitment" dated January 21, 2016, the date of Thompson's arrest by Defendant Fratto.  (ECF No. 77-1 at 6.)

Here, Defendants argue that Fratto is entitled to qualified immunity because the public records demonstrate that Plaintiff's allegations that he violated Plaintiff's Fourth Amendment protection against unlawful seizure, detention, and arrest are implausible pursuant to *Twombly*, and therefore fail to state a constitutional violation under the first prong of the qualified immunity analysis.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna,* __ U.S. __, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In determining whether qualified immunity applies, the courts conduct a two-pronged inquiry. *Pearson*, 555 U.S. at 232; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Spady*, 800 F.3d at 637 (quoting *Pearson,* 555 U.S. at 232). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Spady,* 800 F.2d at 637 (quoting *Pearson*, 555 U.S. at 232). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two

prongs it will analyze first based upon the circumstances of the particular case. *Pearson*, 555 U.S. at 236; *see also Spady,* 800 F.3d at 637 (citing *Pearson,* 555 U.S. at 236).

Here, the detailed averments of the Third Amended Complaint do not establish a Fourth Amendment violation. An arrest violates the Fourth Amendment if executed pursuant to an erroneously issued warrant. *Berg v. County of Allegheny*, 219 F.3d 261, 269-71 (3d Cir. 2000). Here, Plaintiff's detailed averments contend that the warrant "was doctored" and Plaintiff "suspects" that it was "backdated." (ECF No. 68 ¶ 388.) The supporting documentation described in Plaintiff's Third Amended Complaint and submitted by the moving Defendants in support of their Motion to Dismiss does not suggest that the warrant was "doctored" or manipulated in any way. Although the Court must liberally construe the Third Amended Complaint and take all of Plaintiff's allegations as true, the Court need not accept those allegations where assertions are blatantly contradicted by public records properly considered by a court on a motion to dismiss. *Oshiver*, 38 F.3d at 1384 n.2. *See also Twombly*, 550 U.S. at 556-57 (facts are plausible where they present more than a sheer possibility that a defendant has acted unlawfully).

Moreover, even if the warrant was "doctored" in such a way as to not be discernable on its face, Defendant Fratto would still be entitled to qualified immunity. Where an officer executes an arrest based on an objectively reasonable belief that there is a valid warrant, he may be entitled to qualified immunity. *Berg*, 219 F.3d at 272. That is, where the arrest warrant offers no suggestion of irregularity, it is reasonable for an officer to believe that it was issued for probable cause. *Id.* at 272-73. Therefore, Defendant Fratto is entitled to qualified immunity as to Plaintiff's claim for unlawful arrest pursuant to the Fourth Amendment.

Similarly, Defendant Fratto is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim for false imprisonment. To state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 f3d 675, 682-83 (3d Cir. 2012). Because Defendant Fratto acted pursuant to a facially valid warrant on the day of the arrest, Plaintiff's detention was lawful and Fratto is protected by qualified immunity.[3]

To the extent that Plaintiff is alleging a Fourteenth Amendment procedural due process claim against Defendant Fratto with respect to the intentional taking of his property, Plaintiff's allegations fail to state a claim upon which relief may be granted because he has an adequate post-deprivation remedy to protect his due process rights through a tort action in state court. *See Payton v. Horn*, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999) (holding that Pennsylvania tort law offered a remedy for prison official's unlawful deprivation of an inmate's property and therefore inmate failed to state a claim that his constitutional rights were violated), *overruled on other grounds, Ray v. Kertes,* 285 F.3d 287 (3d Cir. 2002); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies). Hence, assuming Plaintiff had a protected property interest in the items taken, and given that Plaintiff had access to state post-deprivation remedies, he cannot make out a claim that he was denied procedural due process. Therefore, Defendant Fratto is protected by qualified immunity as to any attempt by Plaintiff to make out a procedural due process claim for the loss of his property.

---

[3] Plaintiff's claim is properly analyzed under the Fourth Amendment rather than the Fourteenth Amendment Substantive Due Process Clause because the Fourth Amendment provides the more specific textual source of constitutional protection against this sort of alleged governmental intrusion. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

Defendant Zemba is also protected by qualified immunity. Liberally construing the Third Amended Complaint, the thrust of Plaintiff's claim against Zemba is that she failed to arrest Abram when Abram threatened him when she left the courtroom after the third ICC was resolved in Thompson's favor. Zemba observed Abram's outburst and escorted Abram to the elevator. Plaintiff alleges that "Defendant Zemba should have arrested defendant Abram for terroristic threats and witness intimidation but chose not to do so." (ECF No. 68 ¶ 415.) Importantly, Plaintiff further alleges that "Defendant Abram threatened Thompson's life in the presence of a deputy and got in no trouble. Thompson allegedly threatened defendant Abram and got a 3 year PFA." (ECF No. 68 ¶¶ 416-17.)

First, liberally construing the Third Amended Complaint, it appears that Plaintiff is attempting to make out a claim for selective enforcement pursuant to the Equal Protection Clause of the Fourteenth Amendment. The law is well settled that discriminatory enforcement of a statute or law by local officials violates the Equal Protection Clause of the Fourteenth Amendment. *Cox v. Louisiana*, 379 U.S. 536, 556-58 (1965). The Equal Protection Clause provides "no . . . state shall deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. The Equal Protection Clause establishes the fundamental requirement that "the State must govern impartially." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979). It directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to make out a claim for selective enforcement, Plaintiff must establish that officials sought to enforce certain statutes against him and not on Defendant Abram for the same conduct "'on the basis of an unjustifiable standard, such as race, or religion, or some other arbitrary factor,' or when they seek to enforce the law in order 'to prevent the exercise of a fundamental right.'" *Holder v. City of Allentown*,

987 F.2d 188, 197 (3d Cir. 1993) (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). Here, Plaintiff makes no such allegations against Defendant Zemba. Moreover, individuals do not have a constitutional right to the prosecution of those who allegedly break the law. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Instead, the Third Amended Complaint reveals that Zemba conducted herself as a reasonable deputy in de-escalating Abram's confrontation by leading her to the elevator and clearing the court common area. (ECF No. 68 ¶¶ 410-14.)

Therefore, Defendant Zemba is protected by qualified immunity as to any attempt by Plaintiff to make out a claim pursuant to the Equal Protection Clause for selective enforcement.[4]

## OFFICIAL CAPACITY CLAIMS AGAINST FRATTO AND ZEMBA

The official capacity claims against Defendants Fratto and Zemba must be dismissed with prejudice because a suit against an individual in his or her official capacity is, in fact, a suit against the entity of which he is an officer or an agent. *Kentucky v. Graham*, 473 .S. 159, 166 (1985). Because Plaintiff has named the Sheriff's Office as a party defendant, the official capacity claims against Fratto and Zemba should be dismissed.

## CLAIMS AGAINST SHERIFF'S OFFICE

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal

---

[4] Plaintiff's allegations that the video of the event was altered to minimize the actions of Abram fail to satisfy the plausibility standard of *Twombly* and its progeny. The moving Defendants as well as the County Defendants were not served until January 19, 2017. On October 12, 2016, however, the Sheriff's Office delivered a copy of the video to Plaintiff upon Plaintiff's request. According to moving Defendants, Plaintiff did not reveal the pending litigation. A context-specific analysis of the facts suggests that moving Defendants would not have had an incentive at that time to alter the video.

liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

A municipal liability claim against the Sheriff's Office must necessarily fail because Plaintiff has alleged no facts to suggest that the Sheriff's Office had a policy, custom or practice

that resulted in a violation of Plaintiff's constitutional rights. Therefore, the Sheriff's Office Motion to Dismiss should be granted.

REMAINING CLAIMS ALLEGED AGAINST "ALL DEFENDANTS" GENERALLY

Other than his claims for conspiracy and specific claims previously addressed,[5] Plaintiff does not indicate how these moving Defendants violated his rights in those counts directed to "all defendants" generally. Moreover, the detailed facts of the Third Amended Complaint do not suggest their involvement. Therefore, these counts should be dismissed for failure to allege personal involvement of the moving Defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (plaintiff must aver personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence).

CONSPIRACY

In order to state a claim for conspiracy, Plaintiff is required to show "'a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (quoting *Hammond v. Creative Financial Planning*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). *See also Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)). A conspiracy claim requires specific allegations "which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose." *Id.* "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F. Supp. at 1020. Rather, there must be a showing that the alleged conspirators "directed

---

[5] Some of Plaintiff's claims specific to these moving Defendants are duplicative of the claims directed to "all defendants" generally.

themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982) (citing *Tarkowski v. Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980)). The United States Court of Appeals for the Third Circuit has made clear that in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The facts alleged must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

Here, while Plaintiff attempts to allege an overarching conspiracy among defendants, claiming that they acted in concert at various times and at various locations in order to interfere with his rights, the claims are pure speculation and do not amount to sufficient facts from which this Court could infer conspiracy. Plaintiff does not direct the Court to facts that suggest a preceding agreement. Instead, the Third Amended Complaint offers only a sheer possibility that all Defendants engaged in a conspiracy. *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556-57).[6]

Therefore, it is respectfully recommended that the Motion to Dismiss Plaintiff's claims for conspiracy be granted.

SUPPLEMENTAL STATE LAW CLAIMS

---

[6] Like his § 1983 claim for conspiracy, Plaintiff is unable to state a plausible claim for conspiracy pursuant to § 1985 as attempted in Count III. *See United Broth. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). Likewise, Plaintiff's attempt to state a conspiracy claim in Count VII pursuant to 42 U.S.C. § 1986 for "Neglect to Prevent" also fails because a § 1986 claim cannot exist without a viable § 1985 claim. *Patterson v. City of Philadelphia*, Civil Action No. 08-2140, 2009 WL 1259968, at *4 n.4 (E.D. Pa. May 1, 2009).

Because the Court recommends that all claims over which it has original jurisdiction be dismissed,[7] it is further recommended that the Court decline to exercise its supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

It is respectfully recommended that the Motion to Dismiss Third Amended Complaint filed by Defendants Allegheny County Sheriff's Department, Deputy Sheriff Anthony Fratto, Deputy Sheriff Holly Zemba, and Jane and John Does (ECF No. 77) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: September 13, 2017

BY THE COURT

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: Dwayne Thompson
1013 Coal Street
Pittsburgh, PA 15221

---

[7] The Court of Appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). The Court is recommending dismissal with prejudice and is not recommending a grant of leave to amend because it believes such amendment would be both futile and inequitable.

17