## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dwayne Thompson, individually, and on behalf of his minor daughter "RMT" and Pamela McDeavitt, | Civil Action No. 16-1100 |
| Plaintiffs, | |
| v. | District Judge Cercone<br>Magistrate Judge Lenihan |
| Kathryn M. Hens-Greco; Kimberly Berkeley Clark, Krista Abram; Shane Mock; Jonathan Voelker; Pernille Frankmar; Voelker & Colton, LLC; Lauren Darbouze; Reserve Township Police; Brian Tully; Fred Boory Jr; Pittsburgh Municipal Court; Barbara Clements; Allegheny County; Patrick Quinn; Christopher Connors; Geraldine M. Redic; Claire Capristo; Allegheny County Sheriff's Department; Anthony Fratto; Holly Zemba; Allegheny County Department of Court Records; Allegheny County Office of Children and Youth Services; Bruce Noel; Brynn Alpee; McKeesport Area School District; Fifth Judicial District; and John and Jane Does, 1-10, | ECF No. 84 |
| Defendants. | |

## **REPORT AND RECOMMENDATION**

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Allegheny County, Allegheny County Department of Court Records, Allegheny County Office of Children and Youth Services, Barbara Clements in her individual capacity only, Geraldine Redic in her individual capacity only, Bruce Noel, and Brynn Alpee be granted in its entirety.

## II. REPORT

### A. RELEVANT FACTS[1] AND PROCEDURAL BACKGROUND

On July 25, 2016, Plaintiff Dwayne Thompson ("Plaintiff" or "Thompson") filed a Motion for Leave to Proceed in Forma Pauperis. (ECF No. 1.) On July 26, 2016, the Court granted the Motion and Plaintiff's Complaint, brought individually and on behalf of his minor daughter, "RMT," was filed the same day. (ECF No. 2.) On October 24, 2016, Plaintiff, and a newly added plaintiff, Pamela McDeavitt ("McDeavitt") (collectively "Plaintiffs") filed a "Verified Amended Joinder Complaint" ("Amended Complaint"). (ECF No. 13.) Thereafter, pursuant to Order of Court, Plaintiffs filed a Second Amended Complaint December 27, 2016. (ECF No. 31.) Finally, after receiving leave of court on February 8, 2017 to file a Third Amended Complaint as it relates to Defendant McKeesport Area School District (ECF No. 57), Plaintiffs filed a Third Amended Complaint on March 13, 2017. (ECF No. 68.) On August 2, 2017, the District Judge adopted this Court's Report and Recommendation dated July 10, 2017, and Plaintiff McDeavitt was dismissed as a party plaintiff for lack of standing. (ECF No. 130.)

The above-captioned case against the moving Defendants Allegheny County ("County"), Allegheny County Department of Court Records ("DCR"), Allegheny County Office of Children and Youth Services ("CYF"), Barbara Clements in her individual capacity only ("Clements"), Geraldine Redic in her individual capacity only("Redic"), Bruce Noel ("Noel"), and Bryn Albee ("Albee")[2] (collectively "County Defendants"), and a host of other defendants, arises from an underlying custody dispute ("Family Court Proceedings") with the mother of RMT, Defendant Krista Abram ("Abram"). Generally, Plaintiff alleges in painstaking detail the facts and

---

[1] Because the allegations and named defendants are numerous, the Court focuses only on those facts relevant to the pending motion.
[2] Moving Defendants indicate that Bryn Albee has been misidentified in the caption as "Brynn Alpee." Here, the Court refers to this Defendant as "Bryn Albee."

2

circumstances surrounding Plaintiff Thompson's attempts to obtain custody of/visitation with his biological daughter RMT. These attempts include state court proceedings in the Court of Common Pleas of Allegheny County, Family Division; PFA proceedings; alleged violation of PFA orders and attendant indirect criminal contempt ("ICC") proceedings with the involvement of the Reserve Township Police Department; acts and omissions of Children and Youth Services and McKeesport Area School District; the alleged professional negligence of Plaintiff Thompson's attorneys; alleged threats and intimidation by the Sheriff's Office; and alleged omissions by various defendants. Plaintiff appears to allege that all named Defendants were involved in an overarching conspiracy with Defendant Abram and her Defendant boyfriend, Shane Mock, to interfere with Plaintiff Thompson's access to RMT.

As to the County, Plaintiff alleges that it has a general financial incentive to allow the abuse of PFA and ICC matters and to "look the other way, be complicit and /or conspire to put their bottom line before the rights of defendants/obligors and best interests of children." (ECF No. 68 ¶ 43.) Specifically, Plaintiff avers that Allegheny County has an interest in maintaining Defendant Abram's custody of RMT due to its financial stake in Title IV-D incentive payments related to the collection of child support. (ECF No. 68 ¶¶ 393-401.) Plaintiff sets out this theory as follows:

> 2. Allegheny County receives federal funding for the collection and enforcement of child support under Title IV-D.
> 3. The less time that Thompson has custody of RMT the more he is required to pay in child support.
> 4. The more Thompson pays in child support the more Allegheny County collects and the higher their federal incentive payments are.
> 5. Since all the moving defendants are "county" they all have a direct and/or indirect incentive to be complicit in and/or conspire with other defendants to engage in and/or cover up actions taken to violate Thompson's constitutional rights for the purpose of maximizing Title IV-D incentive payments.

3

> 6. Plaintiff[] [is] *not certain, prior to discovery, what benefits county defendants receive directly or indirectly from Title IV-D incentives but it could just be that the monies received by Allegheny County enables them to have a job.*

(Opposition to Motion to Dismiss, ECF No. 109 ¶¶ 2-6) (emphasis added). In support of this theory, Plaintiff alleges omissions of two Allegheny County Departments, DCR and CYF, and four Allegheny County employees.

First, Plaintiff alleges that Defendant Clements, a Family Division court employee, is a co-conspirator based on her alleged "familial type, and/or personal relationship with [D]efendant Abram." (ECF No. 68 ¶¶ 39-41.) Plaintiff states that Clements, in association with other defendants including Judges Hens-Greco and Clark, "willfully and intentionally tried to provoke Thompson into losing his temper and reacting in a manner that would cause him to again be arrested[,]" and use his violent outbursts against him "to justify why he shouldn't have any custody or visitation with RMT." (ECF No. 68 ¶¶ 134-35.)

Plaintiff further avers that his friend, Pamela McDeavitt, sent "dozens" of emails to various defendants, including Defendant Redic, detailing misconduct, violation of judicial canons, and the violation of Thompson's rights. Plaintiff complains that Redic failed to report these emails to the "proper authorities." (ECF No. 68 ¶¶ 54-55, 357-61.)

As to DCR, Plaintiff alleges that because certain PFAs filed against him and his friend, Kathleen Butler, do not appear on the docket in Thompson's Family Division case, DCR maintains a "practice" of not filing certain documents in certain cases. (ECF No.68 ¶¶ 69, 70, 118-20.) Plaintiff indicates that the purpose behind the practice of not filing certain documents was to allow Defendant Abram to abuse the Family Court system. (ECF No. 68 ¶ 121.)

Finally, Plaintiff alleges that CYF failed to intervene on RMT's behalf although it received reports that RMT missed 69 days of school, was tardy 29 times and failed second grade, along with other reports, while in the sole custody of Defendant Abram. (ECF No. 68 ¶¶ 72-74, 352.) Plaintiff indicates that Defendant Albee, RMT's caseworker, was responsible for these omissions. (ECF No. 68 ¶¶ 77-78, 352.) According to Plaintiff, "Defendants [Albee], Noel and CYF were made aware of the evictions, suspected drug use of defendant Abram, the absences, tardiness, the failing of second grade, RMT being kept isolated and locked in a room for long periods of time but refuse[d] to disclose to Thompson what actions were taken . . . ." (ECF No. 68 ¶ 351.) Finally, Plaintiff complains that even though he was told by Defendant Noel of CYF that he was entitled to receive all records from CYF regarding RMT, he has never received them. (ECF No. 68 ¶¶ 75-76, 353-356.)

In Count I, Plaintiff alleges that Defendants Clements, the County, Redic, and DCR violated his rights under the First and Fourteenth Amendments, including "equal access to the Court, confidence rights to equal protection under the law, to petition the courts for redress of grievances, and to be free from retaliation for petitioning the court for redress of grievances." (ECF No. 68, Count I.) In Count XI, Plaintiff alleges violation of his "Fifth Amendment Right to substantive due process and to be free of arbitrary and capricious acts of government taken without valid government purpose" as to Defendants Clements, the County, and Redic. (ECF No. 68, Count XI.) No counts are specifically directed to moving Defendants CYF, Albee, and Noel.

In addition, Plaintiff further alleges a series of claims directed generally to all defendants. That is, Plaintiff does not allege facts within each count that describe how the moving

5

Defendants violated the rights generally referred to in each count. These claims include the following:

Count III: Section 1985 conspiracy to interfere with civil rights;

Count IV: Section 1983 failure to intercede in wrongs;

Count V: Section 1983 malicious abuse of process;

Count VI: Violation of Thompson's rights under the First, Fourth and Fourteenth Amendments;

Count VII: Section 1986 action for neglect to prevent;

Count VIII: Section 1983 deprivation of rights;

Count XII: Ninth Amendment fundamental right of parents to direct the upbringing and education and care of their children;

Count XIII: Intentional infliction of emotional distress;

Count XIV: Parental Alienation.

Plaintiff sues all individuals in their official and personal capacities. (ECF No. 68 ¶ 88.) He seeks only monetary relief in an amount in excess of one million dollars.

B. LEGAL STANDARDS

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550

> U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler[v. UPMC Shadyside*, 578 F.3d [203,][] 213 [(3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).

Importantly, the Court must liberally construe the factual allegations of the complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728, at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

C.  ANALYSIS

1.  DCR and CYF

Moving Defendants argue that because DCR and CYF are subunits of Allegheny County and the County is named as a defendant, these subunit Defendants must be dismissed from the action. Plaintiff responds that DCR and CYF should not be dismissed. (ECF No. 109 ¶ 13.)

DCR and CYF must be dismissed because they are departments of Allegheny County, a named Defendant, and not separate legal entities capable of being sued. *Hernandez v. Borough of Palisades Park Police Depart.,* 58 F. App'x 909, 912 (3d Cir. 2003); *see also Open Inns, Ltd. v. Chester County Sheriff's Dept.*, 24 F. Supp. 2d 410, 416 n.13 (E.D. Pa. 1998); *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996), *cited in Leisure v. State of Pennsylvania Depart. of Child Youth Servs.*, No. 10-CV-07565, 2012 WL 1080142, at *7-8 (E.D. Pa. March 30, 2012) (dismissing Lancaster County Children and Youth Social Service Agency because it is an administrative arm of Lancaster County). Therefore, the Court recommends that DCR and CYF be dismissed with prejudice because any attempt to amend would be futile as a matter of law.[3]

2. Official Capacity Claims against Noel and Albee

Defendants argue that the official capacity claims against Noel and Albee must be dismissed because those claims are duplicative of the claims against the County. Plaintiff responds that these claims should not be dismissed. (ECF No. 109 ¶ 14.)

A suit against an official in his or her official capacity is, in fact, a suit against the entity of which he is an officer or an agent. *Kentucky v. Graham*, 473 .S. 159, 166 (1985). That is, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafter v. Melo*, 502 U.S. 21, 25 (1991). Therefore, the Court recommends that the claims against Defendants Noel and Albee in their official capacities be dismissed with prejudice as any attempt to amend would be futile as a matter of law.

3. Conspiracy

---

[3] The United States Court of Appeals for the Third Circuit in *Phillips v County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

8

Defendants argue that all conspiracy claims must be dismissed because Plaintiff has failed to allege facts to suggest an unlawful agreement. (ECF No. 83 at 13-15.) Plaintiff responds that he has alleged enough facts to allege a conspiracy, and that more facts and motives will be revealed in discovery. (ECF No. 110 at 11-13.)

In order to state a claim for conspiracy, Plaintiff is required to show "'a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (quoting *Hammond v. Creative Fin. Planning*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). *See also Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)). A conspiracy claim requires specific allegations "which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose." *Id.* "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F. Supp. at 1020. Rather, there must be a showing that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982) (citing *Tarkowski v. Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir. 1980)). The United States Court of Appeals for the Third Circuit has made clear that in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The

9

facts alleged must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

Here, while Plaintiff attempts to allege an overarching conspiracy among Defendants, claiming that they acted in concert at various times and at various locations in order to interfere with his rights, the claims are pure speculation and do not amount to sufficient facts from which this Court could infer conspiracy. Plaintiff does not direct the Court to facts that suggest a preceding agreement. Instead, the Third Amended Complaint offers only a sheer possibility that all Defendants engaged in a conspiracy. *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556-57).[4] Any attempt to amend would be futile.

Therefore, it is respectfully recommended that the Motion to Dismiss Plaintiff's claims for conspiracy be granted.

    4.    <u>Section 1983 Violations</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state

---

[4] Like his § 1983 claim for conspiracy, Plaintiff is unable to state a plausible claim for conspiracy pursuant to § 1985 as attempted in Count III. *See United Broth. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). Likewise, Plaintiff's attempt to state a conspiracy claim in Count VII pursuant to 42 U.S.C. § 1986 for "Neglect to Prevent" also fails because a § 1986 claim cannot exist without a viable § 1985 claim. *Patterson v. City of Philadelphia*, Civil Action No. 08-2140, 2009 WL 1259968, at *4 n.4 (E.D. Pa. May 1, 2009).

law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

        a.       First and Fourteenth Amendment violations

In its review of the voluminous Third Amended Complaint and Plaintiff's various submissions, the Court can uncover no bases for Plaintiff's First Amendment claim against the moving Defendants. Therefore, Defendants' Motion to Dismiss Plaintiff's First Amendment claim should be granted. Any attempt to amend would be futile.

As to the Fourteenth Amendment, it appears that Plaintiffs may be attempting to state a Fourteenth Amendment substantive due process claim as it relates to a duty of CYF employees to protect RMT against the actions/inactions of Defendant Abrams.

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the State to protect citizens from the acts of private persons. *Id*. at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. *Id*. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a

11

corresponding duty to assume some responsibility for his safety and general well-being." *Id*. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id*. at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id*. at 195. The *DeShaney* court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 196.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a State does play a part in the creation of the dangers faced by a private person, or where through its actions, the State renders the individual more vulnerable to them. 95 F.3d at 1205, 1211. In order to prevail on a state-created danger claim, a plaintiff must prove the following:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;

> 3) a relationship between the state and the plaintiff existed such
> that the plaintiff was a foreseeable victim of the defendant's acts,
> or a member of a discrete class of persons subjected to the
> potential harm brought about by the state's actions, as opposed to a
> member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that
> created a danger to the citizen or that rendered the citizen more
> vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). A plaintiff's failure to satisfy any one of the above elements will defeat the state-created danger claim. See *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997).

In *Phillips v. County of Allegheny*, the United States Court of Appeals for the Third Circuit discussed the requirement of an affirmative act, emphasizing the following language in *Bright*:

> "Liability . . . is predicated upon the states' *affirmative acts* which
> work to the plaintiff's detriment in terms of exposure to danger. It
> is the *misuse of state authority, rather than a failure to use it,* that
> can violate the Due Process Clause."

515 F.3d 224, 235 (3d Cir. 2008) (quoting *Bright*, 443 F.3d at 282) (other citation omitted) (emphasis added by *Phillips* court). The *Phillips* court continued that "[t]he line between action and inaction may not always be clear. However, we have never found a state-created danger claim to be meritorious without an allegation and subsequently showing that state authority was affirmatively exercised in some fashion." *Id.* at 235-36.

Here, the allegations in the Third Amended Complaint do not allege that Noel or Albee acted "affirmatively" to harm RMT. The basis of Plaintiff's claim appears to be that the omissions of Noel and Albee allowed and enabled Defendant Abram to maintain custody of RMT even though they were informed of serious issues while RMT remained in Abram's care.

13

In addition, it appears that the allegations against County Defendant Redic in her individual capacity concern her omissions to report perceived misconduct to the "proper authorities." The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty upon the State to protect citizens from the acts of private persons.[5] *DeShaney*, 489 U.S. at 198-200. The United States Court of Appeals for the Third Circuit has recognized two exceptions to this general rule. The first exception, as discussed above, concerns the situation when a "state-created danger" is involved. The second exception where the State has a duty to protect or care for individuals from the acts of private citizens arises when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization. *Torisky v. Schweiker*, 446 F.3d 438, 444-45 (3d Cir. 2006). Therefore, any attempt by Plaintiff to state claims under the Fourteenth Amendment Substantive Due Process Clause must fail as a matter of law and any attempt to amend would be futile. Consequently, it is recommended that the moving Defendants' Motion to Dismiss Plaintiff's claims pursuant to the Fourteenth Amendment be granted.

        b.        Failure to Intercede in Wrongs

Defendants contend that Count IV must be dismissed, "Failure to Intercede in Wrongs," because no such federal constitutional or legislative right exists. Plaintiff only responds that Defendants' argument is absurd and has no merit. Although the Court is aware of a cause of action concerning the failure of prison guards to protect inmates from other inmate or prison guard violence, *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997), and the duty of police officers to intercede when other officers deprive an individual of his constitutional rights,

---

[5] The averments against Clements in her individual capacity concern her familial type relationship with Defendant Abram and her attempts to provoke Plaintiff Thompson into losing his temper. These allegations simply do not rise to the level of a constitutionally cognizable violation.

*Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir. 1997), the Court could uncover no such duty in the case law under these facts. Therefore, the Court recommends this claim be dismissed with prejudice. Any attempt to amend would be futile.

        c.        Malicious abuse of process

In order to make out a claim for malicious abuse of process, the United States District Court for the Middle District of Pennsylvania has considered the following:

> "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. . . . [Malicious prosecution] has to do with the wrongful initiation of such process, while abuse of civil process [or criminal process] is concerned with a perversion of a process after it is issued."

*Bristow v. Clevenger*, 80 F. Supp.2d 421, 430 (M.D. Pa. 2000) (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (internal quotations and citations omitted)). Consequently, Plaintiff will prevail on a § 1983 claim for abuse of process where "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Bristow*, 80 F. Supp.2d at 431 (quoting *Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989) (other citations omitted)). Again, the *Bristow* court explained as follows:

> Courts have held that "[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained." . . . "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." . . . "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"

*Bristow*, 80 F. Supp.2d at 431 (internal citations omitted).

15

Here, the facts as alleged by Plaintiff, liberally construed, do not suggest that these moving Defendants had any involvement with the process issued against Plaintiff. Without some type of personal involvement in the facts and circumstances relating to the misuse of process properly issued, the claim for abuse of process must be dismissed with prejudice. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (a plaintiff must aver personal involvement through allegations of participation, personal direction, or actual knowledge). Any attempt to amend would be futile based upon the detailed averments of the Third Amended Complaint.

d. Fifth Amendment

In Count XI of the Third Amended Complaint, Plaintiff alleges a violation of the Fifth Amendment right to substantive due process and the right to be free of arbitrary and capricious acts of government taken without valid government purpose as to Defendants Clements, Allegheny County, and Redic. (ECF No. 68, Count XI.) The claim alleges that these named Defendants conspired together to deprive Plaintiff of these protections.

It is well settled that the Fifth Amendment restricts the actions taken by federal officials and not state actors *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983). Because these allegations are asserted against County employees and the County itself, and do not allege any involvement by federal authorities, these claims fail as a matter of law. Accordingly, the Court recommends these claims be dismissed with prejudice. Any attempt to amend would be futile.

e. Ninth Amendment

Count XII—Ninth Amendment fundamental right of a parent to direct the upbringing and education and care of their child(ren)—fails as a matter of law. "The Ninth

16

Amendment does not independently provide a source of individual constitutional rights."
*Clayworth v. Luzerne Cty.,Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (citing *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007)).[6]

Therefore, it is respectfully recommended that the moving Defendants' Motion to Dismiss Count XII for violation of Plaintiff Thompson's Ninth Amendment rights be granted.

f.   Municipal Liability

Finally, in support of their argument to dismiss Allegheny County, Defendants argue that Plaintiff has failed to state a municipal liability claim. Plaintiff responds that he has stated a claim as to policy or customs of Allegheny County and as to motive: the Title IV-D incentives and/or the fact that Plaintiff is black. (ECF No. 110 at 14-15.)

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the

---

[6] Although the Fourteenth Amendment Substantive Due Process Clause does protect the liberty interest in familial integrity, that interest "is limited by the compelling governmental interest in the protection of children." *Clayworth v. Luzerne Cty.,Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (quoting *Croft v. Westmoreland Cnty. CYS*, 103 F.3d 1123, 1125 (3d Cir. 1997)). Here, Plaintiff has failed to allege conduct sufficiently arbitrary to shock the conscience for purposes of a substantive due process analysis.

17

municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

A municipal liability claim against Allegheny County must necessarily fail because there is no "affirmative link" or "plausible nexus" between the DCR's alleged "practice" of not docketing certain documents, and Plaintiff Thompson's alleged injuries. That is, Plaintiff alleges that because certain PFAs filed against him and his friend, Kathleen Butler, do not appear on the docket in his Family Court case, Defendant Abram was allowed to abuse the Family Court system. Plaintiff's attempt to allege causation is premised upon pure speculation, and defies reason. In addition, Plaintiff's allegation that the Title IV-D incentives caused a deprivation of

18

his constitutional rights is pure speculation and cannot plausibly establish the affirmative link or nexus necessary to support a claim for municipal liability. In fact, Plaintiff admits that he is "not certain, prior to discovery, what benefits county defendants receive directly or indirectly from Title IV-D incentives, but it could just be that the monies received by Allegheny County enables them to have a job." Similarly, Plaintiff has averred no facts to suggest how his race impacted the Title IV-D incentives, or DCR's failure to docket certain documents.

Clearly, the causal link between the alleged policy and practices in issue and the harm allegedly sustained by Plaintiff is absent. Consequently, County Defendants should be dismissed, and any attempt to amend the Third Amended Complaint relating to the municipal liability claims against the County Defendants would be futile.

     5.     Supplemental State Law Claims

Because the Court recommends that all claims over which it has original jurisdiction be dismissed, it is further recommended that the Court decline to exercise its supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

It is respectfully recommended that the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Allegheny County, Allegheny County Department of Court Records, Allegheny County Office of Children and Youth Services, Barbara Clements in her individual capacity only, Geraldine Redic in her individual capacity only, Bruce Noel, and Brynn Alpee be granted in its entirety.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the

date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: September 20, 2017

BY THE COURT

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: Dwayne Thompson
1013 Coal Street
Pittsburgh, PA 15221

All counsel of record
Via electronic filing